UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
1:12-cv-170-RJC

| | |
|---|---|
| WESLEY SCOTT, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN,[1] )<br>Acting Commissioner of )<br>Social Security Administration, )<br>)<br>Defendant. )<br>_____ ) | **ORDER** |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment and supporting memorandum, (Doc. Nos. 14; 15), and Defendant's Motion for Summary Judgment and supporting memorandum, (Doc. Nos. 16; 17).

**I. BACKGROUND**

A. Procedural Background

Plaintiff applied for Title XVI Supplemental Security Income ("SSI") on February 29, 2008.[2] (Doc. No. 8-3 at 15). His claim was initially denied on May 16, 2008, and was again denied upon reconsideration on May 5, 2009. (Id.). Plaintiff was granted a hearing in front of an

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin was substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff also applied for Title II Disability Insurance Benefits. However, at the Administrative hearing, he successfully moved to amend his alleged onset date of disability from March 1, 2001 to February 29, 2008, the filing date of his application for SSI. Plaintiff's amendment of the disability onset date effectively waived his right to Title II Disability Insurance Benefits and left him eligible only for Title XVI SSI. Accordingly, the ALJ dismissed Plaintiff's claim for a Title II hearing. (Doc. No. 8-3 at 15).

Administrative Law Judge ("ALJ"), which took place on January 3, 2011. (Id.). The ALJ again denied Plaintiff's claims on January 13, 2011. (Id. at 25). Plaintiff requested review of the ALJ's decision by the Appeals Council, but the request was denied on May 22, 2012. (Id. at 2).

The ALJ concluded that Plaintiff was not under a disability at any time from February 29, 2008 to January 13, 2011. (Doc. No. 8-3 at 16). Plaintiff's Complaint seeking judicial review and a remand of his case was filed in this Court on July 17, 2012. (Doc. No. 1).

B. Factual Background

The question before the ALJ was whether Plaintiff was disabled[3] at any time between February 29, 2008 and the issuance of the ALJ's final decision on January 13, 2011. (Doc. No. 8-3 at 15). To establish entitlement of benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity: if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509: if no, not disabled;

---

[3] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement: if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work: if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he or she can make an adjustment to other work: if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Doc. No. 8-3 at 18).

At the first step, the ALJ found Plaintiff had not engaged in substantial gainful activity since filing his claim. (Id. at 17). The ALJ then found at the second step that Plaintiff had the severe impairments of: (1) depression; (2) anxiety; (3) degenerative disc disease; and (4) high blood pressure. (Doc. No. 8-3 at 17). At the third step, the ALJ determined that the Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Id. at 18).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform "light work." (Id. at 19). His determination specifically found that Plaintiff retained the RFC to perform:

> a range of light work as defined in 20 CFR 416.967 (b), in that he can carry 20 pounds occasionally and 10 pounds frequently; he can stand, walk and sit, each for 6 hours in an 8-hour workday. The claimant has environmental limitations, such that he should avoid exposure to unprotected heights and unguarded moving machinery. He has moderate work-related mental limitations that restrict him to performance of unskilled activities consisting of simple, routine and repetitive tasks in a low stress, non-production oriented environment that does not require frequent interaction.

3

(Id. at 19).  In making these findings, the ALJ "considered all symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416. 929 and SSRs 96-4p and 96-7p."  (Id. at 20).

The ALJ determined that Plaintiff is unable to perform any past relevant work, since his past work as an automobile repairer required medium exertion and is skilled in nature.  Since Plaintiff's RFC "permits no more than the range of unskilled light work identified above, the demands of his past relevant work exceed his RFC."  (Id. at 25).  The ALJ ultimately determined that considering the Plaintiff's "age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (Id. at 25).

Therefore, the ALJ decided that Plaintiff was not under a disability, as defined by the Social Security Act, from February 29, 2008, through the date of the ALJ's decision, January 13, 2011.

## II.    STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  The District Court does not review a final decision of the Commissioner de novo.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979).  The Social Security Act provides: "The findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  In

4

Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" is "more than a scintilla and must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

The Fourth Circuit has long emphasized that it is not appropriate for a reviewing court to weigh the evidence anew, or to substitute its judgment for that of the Commissioner, if the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir.1990); see also Smith v. Schweiker, 795 F.2d at 345. Indeed, this is true even if the reviewing court disagrees with the outcome; provided there is "substantial evidence" in the record to support the final decision below, the Court will uphold the final decision. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

Plaintiff objects to the ALJ's findings on four grounds: (1) the ALJ erred by not finding that Plaintiff's degenerative joint disease ("DJD") of the knees, residual pain from a gunshot wound in the left leg, and left shoulder DJD constitute severe impairments; (2) the ALJ erred in his evaluation of the medical opinions; (3) the ALJ's credibility assessment is not supported by substantial evidence; and (4) the ALJ erred by not consulting a vocational expert. (Doc. No. 15 at 1).

A. Severe Impairment Determination

Plaintiff argues that the ALJ did not adequately discuss Plaintiff's DJD of the knees, residual leg pain from a 1982 gunshot wound, and shoulder pain in his severe impairment determination. (Doc. No. 15 at 11). Within his report, the ALJ noted that Plaintiff "does not

5

have major dysfunction of any joint resulting in ability to ambulate effectively or resulting in inability to perform fine and gross movements effectively pursuant to Section 1.02 of the Listing of the Impairments." (Doc. No. 8-3 at 18). The ALJ also noted that Plaintiff "exhibited 5/5 strength in both the upper and lower extremities bilaterally . . . was able to walk 100 feet without difficulty," and had "a full range of motion of all major muscle groups." (Id. at 20, 21). Additionally, the ALJ noted Dr. Girmay's findings that despite Plaintiff having a limping gait, he has no medical need for a cane or a walker. (Doc. No. 8-8 at 56, 57). The Court therefore finds there is substantial evidence to support the ALJ's finding that these impairments were not severe.

However, even if the impairments should have been characterized as severe, the Court finds this error would be harmless because the ALJ proceeded to the next step of the evaluation sequence. See Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) (any error here became harmless when the ALJ reached the proper conclusion that [Plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence). Additionally, "where the ALJ moves beyond step two and proceeds through the rest of the sequential evaluation process, 'the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.'" Leovao, WL 6189326, at *3 (quoting Pompa v. Comm'r of Soc. Sec., 73 F. App'x 801, 803 (6th Cir. 2003).

    B.    Medical Opinion Evaluation

Plaintiff next contends that the ALJ erred in his evaluations of the medical opinions in this case, in violation of 20 CFR § 404.1527. (Doc. No. 15 at 1). Plaintiff objects to both the ALJ's physical and mental evaluations of his capabilities.

        1.    Physical Evaluation

6

The Code of Federal Regulations require an ALJ to carefully weigh the opinions of the medical sources on file through consideration of several factors including length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency and specialization. See 20 CFR § 404.1527(d). The medical opinions under discussion come from Plaintiff's two treating physicians, Dr. McGraw and Dr. Girmay. Dr. McGraw treated Plaintiff from March 2007 through December 2010 while Dr. Girmay performed a consultative medical evaluation on April 26, 2008. (Doc. No. 8-3 at 20).

Plaintiff first objects that the ALJ did not adequately consider Dr. McGraw's opinion, specifically the portion of Dr. McGraw's medical records which noted that Plaintiff's pain interfered with his gross motor skills. (Doc. No. 15 at 13); see (Doc. No. 8-9 at 45-52) (gross motor skills). Plaintiff's complaints were self-reported, included in the "Report of Symptoms" section of the medical records, not Dr. McGraw's objective observations of Plaintiff's medical conditions. (Id.). Plaintiff's subjective statements regarding his medical conditions are not valid medical opinions that must be evaluated and incorporated into the ALJ's decision. Morris v. Barnhart, 78 F. App'x 820, 824 (3d Cir. 2003) (citing Craig, 76 F.3d at 590 n.2) (holding that "the mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion"). Therefore, Plaintiff failed to establish any error in the ALJ's consideration of Dr. McGraw's physical evaluation. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Plaintiff objects that the ALJ did not adequately address the findings of Dr. Girmay and their incorporation into the overall assessment of Plaintiff's medical conditions. The Court disagrees. First, the ALJ noted that Dr. Girmay diagnosed Plaintiff with chronic pain in the left

shoulder and bilateral legs, moderate physical limitations, and found he was capable of walking 100 feet without difficulty. (Doc. No. 8-3 at 20). The ALJ also compared Dr. Girmay's light work capability findings to the state agency examiner's medium work capability findings and gave Dr. Girmay's findings greater weight. (Id. at 20, 24). These observations and determinations serve as concrete evidence of the ALJ's adequate assessment of Dr. Girmay's findings, supported by substantial evidence.

2. Mental Evaluation

Plaintiff contends that the psychological examiners opinions should not have been given great weight because they put forth conflicting testimony of Plaintiff's mental limitations regarding full time work capabilities. Plaintiff underwent a psychological consultative evaluation with Dr. Michael Fiore on May 2, 2008. (Id. at 21). Dr. Fiore diagnosed Plaintiff with depression and anxiety. Dr. Fiore stated that Plaintiff "was capable of understanding and following simple instructions, maintaining adequate attention and concentration in order to perform such tasks, [and] managing his own personal, financial, and business affairs with no more than occasional assistance." (Id.). However, he also stated that Plaintiff "could be expected to experience problems tolerating the stressors and pressure associated with a full-time work routine." (Id.).

On April 13, 2009, Plaintiff underwent another psychological evaluation by Dr. Anthony G. Carraway. (Id.). Dr. Carraway stated that Plaintiff's "ability to understand, retain and perform instructions was no more than mildly impaired and that his ability to perform simple, repetitive tasks and to persist at such tasks over the course of an 8-hour workday would be limited only by his objective physical impairments and somatic complaints of pain." (Id. at 22).

Dr. Carraway ultimately concluded that Plaintiff had a mild to moderate impairment in his ability to handle stress and exhibited mild social and interpersonal difficulties. (Id.).

After comparison of both doctors' analyses, the Court finds the examiners' opinions were substantially similar and both were entitled to significant weight. Ultimately, the Court notes that both Dr. Fiore and Dr. Carraway listed a variety of capabilities Plaintiff maintained that conclusively showed the ALJ's decision determining that Plaintiff does not have a mental impairment sufficient to constitute a disability was supported by substantial evidence.

        C.      <u>Whether the ALJ's Credibility Assessment is Supported by Substantial Evidence</u>

Plaintiff argues that the ALJ's credibility assessment is not supported by substantial evidence. (Doc. No. 15 at 14). Specifically, Plaintiff contends that the ALJ did not point to distinct pieces of evidence to justify his determination and disregarded both Plaintiff's reported pain levels and Plaintiff's mother's Third Party Function Report. (Id.). It is the duty of the ALJ to make credibility decisions, yet when an ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. See <u>Craig</u>, 76 F.3d at 589 (duty to make credibility decisions); <u>Hammond v. Heckler</u>, 765 F.3d 424, 426 (4th Cir. 1985) (duty to articulate explicit and adequate reasons). Here, the ALJ considered Plaintiff's mother's statement detailing the difficulties Plaintiff faces with his daily activities, and concluded that the statement "is generally consistent with the record and accordingly entitled to some weight." (Doc. No. 8-3 at 22). The ALJ then addressed Plaintiff's hearing testimony discussing his pain and mental impairments and acknowledged the limitations plaintiff believes his impairments impose upon him. (Id.).

By contrast, the ALJ found that Plaintiff's testimony "is not fully consistent with the

9

reports from his treating physicians, whose records do identify the medical conditions of which the claimant complains but do not reflect a level of impairment that would preclude all work activity." (Id.). He further concluded, "this testimony is inconsistent with the medical opinions of the consultative examiners, whose medical and physiological assessments revealed no more than moderate physical and mental limitations." (Id.).

The ALJ noted that Plaintiff's "treatment records overall reflect varying degrees of pain, rather than constant unremitting pain and reflect his treating physicians' opinions that his pain is effectively managed with Percocet." (Id.). T+-he ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the RFC assessment." (Id. at 24). Thus, the Court finds that the ALJ properly assessed the subjective evidence Plaintiff put forth, contrasted it with the objective medical evidence on record, and made an appropriate evaluation of Plaintiff's subjective complaints, supported by substantial evidence.

      D.     <u>Whether the ALJ Was Allowed to Forego the Use of a Vocational Expert</u>

Plaintiff asserts that the ALJ should have consulted a vocational expert to support his step-five determination. A vocational expert is required where a plaintiff demonstrates the presence of nonexertional impairments. <u>Grant v. Schweiker</u>, 699 F.2d 189, 192 (4th Cir. 1983). Once a plaintiff demonstrates nonexertional impairments:

> the Secretary, in order to prevail, must be required to prove by expert vocational testimony that, despite [a plaintiff's] combination of nonexertional and exertional impairments, specific jobs exist in the national economy which he can perform. The grids may satisfy the Secretary's burden of coming forward with evidence as to the availability of jobs the claimant can perform only where the claimant suffers solely from exertional impairments.

Id.

The ALJ determined that Plaintiff does suffer from mental health impairments, which constitute nonexertional impairments, specifically anxiety, depression, and social interaction limitations. (Doc. No. 8-3 at 24, 25). These impairments are accounted for in the ALJ's RFC determination by restricting Plaintiff to the performance of "non-complex, repetitive and routine tasks in a low stress, non-production environment that does not involve significant interpersonal interaction." (Id. at 24-25). While these facts would seem to require the testimony of a vocational expert due to the nonexertional impairments, this Court has found that a limitation to simple, routine, repetitive work is equivalent to a limitation of unskilled work. Williams v. Astrue, No. 3:11CV592-MOC-DSC, 2012 WL 4756066, at *3-4 (W.D.N.C. Aug. 27, 2012) (Cayer, J.), adopted by, No. 3:11CV592, 2012 WL 4756064 (W.D.N.C. Oct. 5, 2012) (Cogburn, J.). Multiple other courts have come to the same conclusion. See e.g., Allison v. Apfel, No. 99-4090, 2000 WL 1276950, at *4 (6th Cir. 2000) (viewing a limitation to simple, routine, repetitive tasks as a limitation to unskilled work); Alsonso v. Comm'r of Soc. Sec., No. 1:10-CV-634, 2011 WL 4526676, at *11 (W.D. Mich. August 8, 2011) (holding that a limitation to simple, repetitive, routine tasks "is in essence shorthand for the types of duties involved in unskilled work"); Prescott v. Soc. Sec. Admin., No. 1-09-CV-522-JAW, 2010 WL 4259001, at *10 (D. Me. Oct. 21, 2010) (finding that a limitation to simple tasks is equivalent to a limitation to unskilled work); Bovell v. Barnhart, No. 05-2140, 2006 WL 1620178, at *3 (E.D. Pa. June 9, 2006) (finding unskilled work to be consistent with "simple, routine tasks"). Additionally, only when a nonexertional condition affects an individual's RFC to perform work that he is otherwise exertionally capable of performing does the Grant rule (requiring vocational testimony) apply.

Hedrick v. Colvin, No. 5:11-CV-113-RLV-DCK, 2013 WL 2434612, at *6, (W.D.N.C. June 4, 2013) (Voorhees, J.); Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir. 1984) (discussing when an impairment is exertional or nonexertional and thus when to apply the Grids). Finally, Plaintiff's "limitation to simple, unskilled, entry level work that allows for less stress work without public contact or significant interaction with others would not significantly erode the occupational base represented by the Grids." Dollins v. Astrue, No. 08-141-KSF, 2008 WL 4402208, at *4 (E.D. Ky. September 24, 2008); see Silva-Valentin v. Comm'r of Soc. Sec., 74 F. App'x 73, 75 (1st Cir. 2003) (affirming the ALJ's use of the Medical-Vocational Guidelines where plaintiff suffered a moderate nonexertional limitation in accepting supervision and coping with changes in the work place).

To summarize: (1) the expectations of performing unskilled work are consistent with simple, routine, repetitive tasks; (2) unskilled work availability can be determined without a vocational expert and instead by using The Medical Vocational Guidelines, 20 CFR Part 404, Appendix 2; and thus (3) if a Plaintiff's nonexertional impairments are no more limiting than the exertional impairments, the vocational expert requirement can be bypassed as the Grids will suffice in assessing the job availability based on Plaintiff's RFC. Ultimately, Plaintiff's nonexertional conditions did not affect his RFC to perform the light, simple, unskilled work that his RFC dictated, and thus the ALJ's decision not to incorporate a vocational expert within his step-five determination was supported by substantial evidence.

## IV. CONCLUSION

In light of the deferential standard of review applied under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), the Court finds that there is substantial evidence to support the

Commissioner's final decision.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 14), is **DENIED**;

2. Defendant's Motion for Summary Judgment (Doc. No. 16), is **GRANTED**.

3. The Clerk of Court is directed to close this case.

Signed: July 26, 2013

Robert J. Conrad, Jr.
United States District Judge